```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAN CAO, et al.         :      CIVIL ACTION
                        :
     v.                 :
                        :
EVELYN UPCHURCH, et al. :      NO. 07-1232
```

                             MEMORANDUM

Dalzell, J.                                         July 16, 2007

       Plaintiffs seek an order compelling the United States Citizenship and Immigration Services ("USCIS") and the Federal Bureau of Investigation ("FBI") to act on their applications to adjust their immigration status to that of permanent residency. There being no disputed facts, this case turns on the existence of our jurisdiction over the subject matter and our authority to compel agency action under these circumstances. We review these issues in detail below.

**Facts**

       Dr. Han Cao and his wife, Natalja Karol, plaintiffs in this action, have applied to have their immigration status adjusted to that of permanent residents of the United States. Dr. Cao is a citizen of the People's Republic of China and Ms. Karol is a citizen of Lithuania. Dr. Cao holds a Ph.D. in molecular biology from the University of Delaware. He is the founder and Chief Scientific Officer of BioNanomatrix, a company created from a project at Princeton University that the Department of Defense funded. The company is now working with the National Cancer Institute on diagnostic tests to determine the degree of damage done to cancer patients' DNA by radiation

treatment.  This will aid oncologists in determining the optimal dosage of radiation therapy for such patients.

USCIS approved Dr. Cao's I-140 immigrant worker petition on October 24, 2003.  Plaintiffs filed their applications for adjustment of status on April 1, 2003.[1]  Immigrant visa numbers in the proper categories were available at the time the action was filed, and plaintiffs have complied with the statutory and regulatory requirements for adjustment of status.  Although as of April 18, 2007, USCIS was processing applications in plaintiffs' category with receipt notice dates of October 14, 2006, plaintiffs' applications have not yet been adjudicated.

**Analysis**

    **A.**    **Subject Matter Jurisdiction**

To begin, we must address defendants' threshold claim that we lack jurisdiction over the subject matter.  Defendants' argue that two separate provisions of the Immigration and Nationality Act (INA) -- 8 U.S.C. § 1252(a)(2)(B) and 8 U.S.C. § 1252(g) -- strip us of jurisdiction.  We address each of these subsections in turn.

    **1.**    **Section 1252(a)(2)(B)**

Section 1252(a)(2)(B) states that, with some exceptions not relevant here, no court has jurisdiction to review either

---

[1] Although the parties do not dispute these dates, and the April 1, 2003 date is unquestionably correct, the USCIS I-140 date is palpably wrong.

"(i) any judgment regarding the granting of relief under section ... 1255 of this title [addressing adjustment of status]" or "(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."

Although defendants claim that our review is barred by both subsections, Def. Mem. at 4, we do not think that defendants' delay in addressing plaintiffs' petition can be fairly characterized as a "judgment." The term judgment is not defined in the INA, see 8 U.S.C. § 1001, so we understand it to be used in its everyday sense. The OED offers many definitions for judgment,[2] but the two most relevant here are "[t]he pronouncing of a deliberate opinion upon a person or thing" and "[t]he formation of an opinion or notion concerning something by exercising the mind upon it."[3] Certainly, defendants have not pronounced a deliberate opinion in relation to plaintiffs' applications and we have no reason to believe that they have formed an opinion or notion. Further, Section 1252(a)(2)(B)(i) only prohibits our review of a "judgment regarding the granting of relief." Because it does not appear that defendants have made any judgment regarding the granting of relief, Section 1252(a)(2)(B)(i) by its terms does not apply.

---

[2] This is unsurprising for a word that has been in recorded use since the mid-13th century.

[3] See VIII The Oxford English Dictionary 294, defs. 6 and 7.a. (2d ed. 1989).

Defendants also contend that Section 1252(a)(2)(B)(ii) precludes our jurisdiction over this matter. That subsection bars our review of "any other decision or action" that is committed to the discretion of USCIS.[4] Defendants point to a number of cases, most notably Safadi v. Howard, 466 F. Supp. 2d 696 (E.D. Va. 2006), in support of their contention that § 1252(a)(2)(B)(ii) covers the situation at issue here. In Safadi, the district court found that the term action addressed "the entire process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds." Id. at 699. The court thus adopted a very broad reading of Section 1252(a)(2)(B)(ii) that in essence precludes any judicial review of USCIS's handling of an adjustment of status application.

Although our Court of Appeals has not directly addressed the issue here, it has on several occasions directed us to adopt a narrow reading of Section 1252(a)(2)(B)(ii). In Khan v. Attorney Gen., 448 F.3d 226, 232 (3d Cir. 2006), that Court quoted with approval the Fifth Circuit's analysis of Section 1252(a)(2)(B)(ii)'s scope:

> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. That reading, however, is incorrect, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review discretionary authority specified in the statute. The statutory language is uncharacteristically pellucid on this score; it does not allude

---

[4] It is uncontested that the Secretary of Homeland Security has delegated the review of petitions such as those at issue here to USCIS.

4

>>generally to "discretionary authority" or to "discretionary authority exercised <u>under this statute</u>," but specifically to "authority for which is <u>specified under this subchapter</u> to be in the discretion of the Attorney General."

<u>Id.</u> (quoting <u>Zhao v. Gonzales</u>, 404 F.3d 295, 303 (5th Cir. 2005)). In adopting the language of the Fifth Circuit, our Court of Appeals followed its own earlier guidance in <u>Soltane v. United States Dep't of Justice</u>, 381 F.3d 143, 146 (3d Cir. 2004), where it found that "[t]he key to § 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by statute." While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely.[5] <u>See</u> <u>Duan v. Zamberry</u>, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007) at *2; <u>accord</u> <u>Song v. Klapakas</u>, 2007 WL 1101283 (E.D. Pa. Apr. 12, 2007) (Stengel, J.); <u>Xu v. Chertoff</u>, C.A. No. 07-420 (E.D. Pa. Mar. 21, 2007) (Katz, J.).

---

[5] Although Section 1255(a) gives the Attorney General authority to issue regulations governing the adjustment of status, our Court of Appeals has held that, in order for Section 1252(a)(2)(B)(ii) to apply, the discretion must be granted by the statute, not by the implementing regulations. <u>Khan</u>, 448 F.3d at 231-233. Further, the regulations that apply here, <u>see</u> 8 C.F.R. §§ 245.1-245.22, do not address the question of pace or timing of a decision. In their reply, defendants cite to <u>Li v. Gonzales</u>, 2007 WL 1303000 (D.N.J. May 3, 2007), which found that 8 C.F.R. § 103.2(b)(18) establishes defendants' discretion to withhold adjudication. Even had defendants claimed that the procedure for withholding adjudication established by subsection 103.2(b)(18) had been followed in this case. <u>Li</u> did not address our Court of Appeals's holding in <u>Khan</u>. Because that holding explicitly requires the basis for discretion to be statutory rather than regulatory, we decline to follow <u>Li</u>.

We note further that Safadi paradoxically found that the Court might have jurisdiction "where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application." Safadi, 466 F. Supp. 2d at 700. The statutory language that Safadi interprets allows for no such exception, so it is difficult to understand how Section 1252(a)(2)(B)(ii)'s jurisdiction-stripping could suddenly become inapplicable in cases of extreme delay. Indeed, the court explicitly found that 5 U.S.C. § 706(1), which authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed," was insufficient to restore its jurisdiction in the face of Section 1252(a)(2)(B)(ii). Id.

We also find unconvincing the argument that courts should refrain from interfering with the speed at which applications are processed because "delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 [sic] world." Id. at 701 n.6 (quoting Mustafa v. Pasquerell, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006) at *5). Given that USCIS unquestionably has absolute and unreviewable discretion to deny an application for permanent residency, national security does not require that it also have absolute discretion to delay such an application to Dickensian lengths.

For all of these reasons, we find that Section 1252(a)(2)(B)(ii) does not strip us of jurisdiction over plaintiffs' complaint.

## 2. Section 1252(g)

Defendants next argue that 8 U.S.C. § 1252(g) bars our review of their handling of plaintiffs' applications.  Section 1252(g) states, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  Defendants cite Gomez-Chavez v. Perryman, 308 F.3d 796 (7th Cir. 2002) for the proposition that Section 1252(g) applies even where the relevant agency has failed to act.

Before we reach that question, however, we must examine whether Section 1252(g) applies in the context of an application for adjustment of status.  8 U.S.C. § 1252 is entitled "Judicial review of orders of removal."  This must mean, in the absence of some explicit language directing us to do otherwise, that we should read this section as applying to cases in which a litigant seeks review of a removal decision.  In the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 213, div. B, ("RIDA"), Congress inserted the words "and regardless of whether the judgment, decision, or action is made in removal proceedings" into Section 1252(a)(2)(B), thereby making the language of that subsection applicable to all immigration decisions.  RIDA § 101(f)(2).  Though it could have inserted identical language into 1252(g), Congress elected not to do so.  Were we to read Section 1252 as applying outside the removal context generally, the amendment to 1252(a)(2)(B) would be rendered surplusage.

Defendants cite to no case that explicitly applies Section 1252(g) outside of the removal context.  See, e.g., Li v. Agagan, 2006 WL 637903 (5th Cir. Mar. 14, 2006) ("8 U.S.C. § 1252(g) precludes jurisdiction because Appellant was actually seeking review of the decision to execute a removal order.") (emphasis added).  "Thus, because [plaintiffs'] petition for adjustment of status is separate and distinct from any matter related to an order of deportation, § 1252(g) 'has nothing to do with the present case.'"  Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir. 1999) (quoting Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999)).  Because Section 1252(g) has no application at all, we need not address the issue of whether to apply Gomez-Chavez's holding that Section 1252(g) applies even in cases of Government inaction.

    **B.** **Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

Because neither of the subsections of 8 U.S.C. § 1252 that defendants cite strips us of jurisdiction, we find that we have subject matter jurisdiction under 28 U.S.C. § 1331 since plaintiffs allege a cause of action under two separate federal laws, namely the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706(1).  We must now address defendants' contention that plaintiffs have failed to state a justiciable cause of action under either of those statutes.  Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive.  See Hernandez-Avalos v. I.N.S., 50 F.3d 842, 844-45

(10th Cir. 1995); Giddings v. Chandler, 979 F.2d 1104, 1108, 1110 (5th Cir. 1992); Jarecki v. United States, 590 F.2d 670, 675 (7th Cir. 1979). We will, therefore, address both statutes together.

We begin by noting that plaintiffs do not challenge a decision on their applications for adjustment of status, nor do they ask this Court to compel a particular result. Rather, they seek only to compel an adjudication. Compl. ¶ 29. Therefore, defendants' reliance on cases such as Sharkey v. Ganter, 2006 WL 177156 (S.D.N.Y. Jan. 24, 2006), is misplaced. Sharkey's holding that "the mandamus statute alone cannot create subject matter jurisdiction in cases challenging the denial or revocation of adjustment of status," id. at *3, has no relevance here where no such denial or revocation has happened. Similarly, the Eighth Circuit's ruling in Castillo v. Ridge, 445 F.3d 1057 (8th Cir. 2006), is inapposite because plaintiff in that case sought "a writ of mandamus to compel the INS to adjudicate in his favor his adjustment of status application," id. at 1060 (emphasis added).

The APA allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek judicial review of that action. 5 U.S.C. § 702. The definition of "agency action" explicitly includes "failure to act." 5 U.S.C. § 551(13). Under judicial review, the reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(a)(1). In addition to specific procedures required when agencies act, the APA includes a general requirement that "[w]ith due regard for the convenience and

9

necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

A claim under Section 706(a) "can proceed only where a plaintiff asserts that an agency failed to take a <u>discrete</u> agency action that it is <u>required</u> to take."  <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004).  Although courts are by no means unanimous on this point, the majority position appears to be that, while USCIS has broad discretion to grant or deny an application for permanent residency, it has a non-discretionary duty to make some <u>decision</u> on the application. <u>Kaplan v. Chertoff</u>, 481 F. Supp. 2d 370, 399 (E.D. Pa. 2007) (Robreno, J.); <u>accord</u> <u>Song</u>, 2007 WL 1101283 at *3 n.6.[6]  "[US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely."  <u>Kaplan</u>, 481 F. Supp. 2d at 399.  (quoting <u>Kim v. Ashcroft</u>, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)).  We agree with the majority view that USCIS has a non-discretionary duty to adjudicate the application, and therefore a claim under Section 706(a) is cognizable.

---

[6] A number of the cases that find no such duty still leave open the possibility that, in cases of extreme or unexplained delay, a cause of action would lie.  <u>See, e.g.</u>, <u>Li v. Chertoff</u>, 482 F. Supp. 2d 1172, 1178 (C.D. Cal. 2007) ("<u>[A]s long as USCIS is making reasonable efforts to complete the adjudication</u>, the pace required to complete that process is committed to USCIS's discretion.") (emphasis added); <u>Safadi</u>, 466 F. Supp. 2d at 700 ("Importantly, not addressed here is the question whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application.").

Defendants have pointed to 8 C.F.R. § 103.2(b)(18) as a basis for their discretion to delay the adjudication of plaintiffs' applications indefinitely. That subsection, while it allows USCIS to withhold adjudication of an application, establishes a specific protocol for such delays where first the district director, then the regional commissioner, and finally the Associate Commissioners for Examinations and Enforcement must explicitly determine at six month intervals that additional delay is required. In order to withhold adjudication under 103.2(b)(18), the district director must also make a determination that "the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation."[7] Defendants make no claim that this procedure has been followed or that disclosure of information would prejudice the investigation. In the absence of compliance with the stated procedure, § 103.2(b)(18) does not give defendants discretion to delay resolution of plaintiffs' applications. See Elmalky v. Upchurch, 2007 WL 944330 (N.D. Tex. Mar. 28, 2007) at *4.

Because we find that, in at least some circumstances, the APA supports a cause of action to compel USCIS to reach some decision, defendants' motion to dismiss must fail.[8]

---

[7] We need not address here the question of whether the courts would have any jurisdiction to review such a determination.

[8] Defendants do not argue that plaintiffs' allegations are insufficient to make out a cause of action but rather that no
(continued...)

11

Because we have already found that the availability of a writ of mandamus in this case is co-extensive with the availability of relief under Section 706(a)(1), we need not address that separately.

### C.     Plaintiffs' Motion for Summary Judgment

Attached to plaintiffs' response to defendants' motion was their own motion for summary judgment.  Because the parties agree that there are no disputed issues of fact, see Def. Reply at 3, we will proceed to address that motion and resolve the case on the basis of the current written submissions.

Our power to grant relief is limited by statute to cases in which agency action is "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(a)(1).  Plaintiffs, as both the moving party and the party bearing the burden of proof at trial, must produce evidence demonstrating that they are entitled to judgment as a matter of law, i.e., that USCIS action has been unlawfully withheld or unreasonably delayed.  Fed. R. Civ. P. 56(c).

Plaintiffs' motion is based primarily on two facts: that the adjudication of the applications has now taken more than four years, see Pl. Mot., ex. 1, and that, on average, recently filed applications are being processed in about six months, Pl. Mot., ex. 3.  We also note that 8 C.F.R. § 103.2(b)(18) requires

---

[8](...continued)
cause of action to compel adjudication of an application for legal permanent residency is ever proper.  We need not, therefore, scrutinize the sufficiency and plausibility of the allegations in the wake of Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).

the district director to determine that a delay is warranted after one year has passed.  This appears to contemplate that most applications will be reviewed within that time frame.

There is no particularized standard by which we are directed to determine whether a delay is unreasonable.  Rather, "when an agency is required to act -- either by organic statute or by the APA -- within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable."  Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999).  We find that, while circumstances certainly exist that could justify a delay such as the one plaintiffs have experienced, a four-year delay in the review of an application for legal permanent residence is presumptively unreasonable.

On a motion for summary judgment, once the moving party has produced evidence sufficient to entitle it to judgment as a matter of law, it is incumbent on the non-moving party to produce evidence demonstrating the existence of a disputed factual issue.  Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Although we find that a four-year delay is presumptively unreasonable, there are, as we noted above, circumstances that could justify such a delay.  Celotex requires, however, that once plaintiffs have demonstrated a presumptively unreasonable delay, defendants shoulder the burden of producing evidence explaining the reasons for it.  Defendants' failure to do so is dispositive.  Fed. R. Civ. P. 56(e).

We recognize that, because the work of USCIS is intimately connected to questions of national security, there may be situations in which evidence to justify defendants' delay exists but such evidence cannot be shared with the applicant. 8 C.F.R. § 103.2(b)(18), however, provides USCIS with adequate means to deal with such a situation. Section 103.2(b)(18) does not require USCIS to reveal to the applicant the reasons for delay. It merely requires that certain procedures for delaying adjudication be followed. Similarly, in a suit claiming unreasonable delay, USCIS may defend its actions merely by demonstrating compliance with the regulations. It need not file with the court details of the ongoing investigation. Because defendants here have made no attempt to rebut plaintiffs' proof of unreasonable delay,[9] Rule 56(e) requires us to grant plaintiffs' motion for summary judgment.[10]

BY THE COURT:

/s/ Stewart Dalzell, J.

---

[9] Although compliance with 8 C.F.R. § 103.2(b)(18) is the simplest means of rebutting plaintiffs' claim, it is certainly not the only one.

[10] We are aware of defendants' concern that, faced with a requirement to make an adjudication without all investigations complete, they could be forced to deny the application, a determination that would clearly be unreviewable. Although this is a legitimate concern, because plaintiffs have sought an order compelling an adjudication, and we have determined that they are entitled to one, we must grant their request.

14

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAN CAO, et al.                      :     CIVIL ACTION
                                     :
         v.                          :
                                     :
EVELYN UPCHURCH, et al.              :     NO. 07-1232
```

<u>ORDER</u>

AND NOW, this 16th day of July, 2007, upon consideration of defendants' motion to dismiss (docket entry # 3), plaintiffs' motion for summary judgment (docket entry # 5), and the parties' replies, and for the reasons articulated in the accompanying Memorandum of Law, it is hereby ORDERED that:

1.   Defendants' motion to dismiss is DENIED;
2.   Plaintiffs' motion for summary judgment is GRANTED;
3.   By August 17, 2007, defendants shall ADJUDICATE plaintiffs' petitions for legal permanent residency and inform plaintiffs of the determination; and
4.   The Clerk of Court shall CLOSE this matter statistically.

BY THE COURT:

<u>/s/ Stewart Dalzell, J.</u>

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAN CAO, et al.                    :    CIVIL ACTION
                                   :
         v.                        :
                                   :
EVELYN UPCHURCH, et al.            :    NO. 07-1232
```

## JUDGMENT

AND NOW, this 16th day of July, 2007, the Court having today granted plaintiffs' motion for summary judgment, it is hereby ORDERED that JUDGMENT IS ENTERED in favor of plaintiffs Han Cao and Natalja Karol and against defendants Evelyn Upchurch, Paul Novak, Emilio González, and Robert S. Mueller, III.

BY THE COURT:

/s/ Stewart Dalzell, J.